# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| APEX PHYSICAL THERAPY, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ZACHARY BALL, TODD LINEBARGER, and ADVANCED PHYSICAL THERAPY, LLC,<br><br>    Defendants. | Case No. 3:17-cv-00119-JPG-DGW<br><br><br><br><br><br><br>Consolidated with: |
| ZACHARY BALL, TODD LINEBARGER, and ADVANCED PHYSICAL THERAPY, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APEX PHYSICAL THERAPY, LLC,<br><br>    Defendant. | Case No. 3:17-cv-00746-JPG-DGW |

## MEMORANDUM AND ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

In this business dispute, Defendants Zachary Ball and Todd Linebarger have filed a motion for summary judgment on their counterclaims. (ECF No. 98.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** that motion.

**I.    BACKGROUND**

This is a battle between two physical therapy companies: Apex Physical Therapy, LLC and Advanced Physical Therapy, LLC. Zachary Ball and Todd Linebarger used to work for

1

Apex, but they left the company to form Advanced. (Am. Compl. ¶¶ 5–6, 8–12, 27–30, ECF No. 83.) Now, Apex says that some of Ball's and Linebarger's conduct with Advanced—such as attempting to poach an account from Apex, soliciting a customer of Apex to write a testimonial for Advanced, and more—breaches two post-employment restrictive covenants in their old Apex contracts: a confidentiality provision and a referral source provision. (*Id.* at ¶¶ 60–84.) Those covenants read as follows:

> **4.1** *Confidentiality and Nondisclosure*
>
> (a) Employee agrees that effective immediately and at all times thereafter, Employee will hold in the strictest confidence and will not make personal use of, nor disclose to any person or entity, any Confidential Information relating to Employer or any of their subsidiaries, affiliates and any other franchise or entity operating as Apex Physical Therapy, ApexNetwork Physical Therapy, or any derivation of Apex Physical Therapy (collectively, the **"APEX Related Parties"**), without the express written consent of Employer.
>
> (b) As used in this Agreement, **"Confidential Information"** includes, but is not limited to, the following: manuals, processes, methods, techniques, templates, documents, electronic files, contracts, Referral Sources (as defined below), projected results, supplier lists (including existing and potential supplier information), pricing, marketing, computer programs, skills, performance specifications, technical and other data, designs, schematics, equipment, set-up, billing, samples, products and services information (including information regarding all existing products and services and any future or planned products or services), financial information and results and other information and know-how relating to or useful in the business or operations of any of the APEX Related Parties. **"Confidential Information"** does not include information which becomes generally known to the public other than through an improper disclosure. Employee acknowledges that any and all Confidential Information is proprietary, unique and commercially sensitive in nature and has been developed over time and reflects a substantial investment. Employee further acknowledges that the Apex Related Parties maintain substantial secrecy concerning the Confidential Information and that Employee has acquired Confidential Information through employment.
>
> […]
>
> **4.3** *Non-Solicitation of Referral Sources.*

2

> For a period of two (2) years after the expiration, or termination of Employee's employment with Employer for any reason, and whether voluntary or involuntary and whether for cause or without cause, Employee will not, directly or indirectly solicit, and will not directly or indirectly contact any existing Referral Source or identified prospective Referral Source with whom Employee has had direct or indirect contact or about whom Employee has learned confidential information and/or trade secrets by virtue of his/her employment with Employer, other than Referral Sources that Employer has not had contact with within the two (2) years immediately preceding the expiration or termination my [sic] employment with Employee. A "**Referral Source**" is a person or entity which refers or can refer patients to Employer, such as a physician, a hospital, a physician assistant, a nurse practitioner, a nurse case manager, or a business.

(ECF No. 83-2.) The confidentiality provision appears in both Ball's and Linebarger's contracts, but the non-solicitation of referral sources provision only appears in Ball's. (*Compare* Ball's Employment Agreement, ECF No. 83-2, *with* Linebarger's Employment Agreement, ECF No. 83-3.)

Ball and Linebarger have now moved for summary judgment, arguing that they are entitled to a declaratory judgment that the restrictive covenants are overbroad and unenforceable. (ECF No. 98.) Basically, they say that APEX is attempting to use the covenants to prevent them from (1) working for Advanced in a state where Apex has never provided service; (2) providing physical therapy services at facilities that Apex has never provided any services to; and (3) from ever utilizing a document, skill, or other "know-how" that is useful to Apex's business regardless of whether Ball and Linebarger obtained those items and skills from universities, training schools, or any other entity besides Apex. But Apex, on the other hand, provides a very different interpretation: it claims that the provisions are narrowly tailored to protect Apex's legitimate business interests, and that at the time of signing, it only intended the provisions to protect against the dissemination of information learned directly through Ball's and Linebarger's employment at Apex. (*See* ECF Nos. 105, 106.)

## II. LEGAL STANDARDS

A.      **Summary Judgment**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). If the moving party bears the burden of persuasion on an issue at trial, it must "lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. National Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord Felix v. Wisconsin Dep't of Transp.*, 828 F.3d 560, 570 (7th Cir. 2016). Where the moving party fails to meet that strict burden, the Court cannot enter summary judgment for that party even if the opposing party fails to present relevant evidence in response. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by

4

"some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

### B. Restrictive Covenants under Illinois State Law

Since this action is rooted in diversity jurisdiction, the parties agree that Illinois contract law governs: a federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under Illinois law, a reasonable restrictive covenant "(1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor[;] and (3) is not injurious to the public." *Reliable Fire Equip. Co. v. Arredondo*, 2011 IL 111871, ¶ 17, 965 N.E.2d 393, 396 (citing Restatement (Second) of Contracts § 187 cmt. b, § 188(1) & cmts. a, b, c (1981)). The second prong—"legitimate business interest"—is particularly nuanced: it weighs "the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions." *Id.* at 403; *see also* Restatement (Second) of Contracts § 188 cmt. d (1981)). Ultimately "[n]o factor carries any more weight than any other, but rather its importance will depend on the specific facts and circumstances of the individual case." *Id.* at 403. This reasonableness inquiry is a matter of law for the Court to decide. *Dam, Snell & Taveirne, Ltd. v. Verchota,* 324 Ill. App. 3d 146, 151, 754 N.E.2d 464, 468 (2001).

### III. ANALYSIS

This case presents a hornbook example of the contrasts between unreasonable and reasonable restrictive covenants. The confidentiality provision is unreasonable because it reaches

5

an unforgivably large amount of material and is not limited in time or geographic scope. The referral source provision, however, is reasonable because it is narrow in scope and expires within two years of the termination of employment.

### A. The Confidentiality Provision

First, the confidentiality provision prohibits former employees of APEX from using:

> manuals, processes, methods, techniques, templates, documents, electronic files, contracts, Referral Source…projected results, supplier lists (including existing and potential supplier information), pricing, marketing, computer programs, skills, performance specifications, technical and other data, designs, schematics, equipment, set-up, billing, samples, products and services information (including information regarding all existing products and services and any future or planned products or services), financial information and results and other information and know-how relating to or useful in the business or operations of any of the APEX Related Parties.

(ECF No. 83-2, pp. 1–2.) It is hard to imagine a restrictive covenant more overbroad than this one. Not only does it specifically mention nearly every conceivable business resource—including computer programs, equipment, skills, and "processes"—but it also contains a catch-all provision at the end: "know-how relating to or useful in the business or operations." No complicated analysis is necessary here: the provision reads to prevent Ball and Linebarger from utilizing just about anything and everything they ever learned or used while they worked at APEX, including simple know-how that is useful to APEX in any manner. The drafter seemingly did not even try to narrow the provision to protect a legitimate business interest of APEX, and it facially imposes an undue hardship on Ball and Linebarger. *Reliable Fire Equip. Co.*, 965 N.E.2d at 396.

To make matters worse, the confidentiality provision does not contain any temporal or geographic limitations. Illinois courts have "a long tradition of upholding [certain restrictive covenants] in employment contracts involving the performance of professional services when the

limitations as to time and territory are not unreasonable." *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 76, 866 N.E.2d 85, 98 (2006) (citing *Cockerill v. Wilson*, 51 Ill.2d 179, 183–84, 281 N.E.2d 648 (1972); *Canfield v. Spear*, 44 Ill.2d 49, 254 N.E.2d 433 (1969); *Bauer v. Sawyer*, 8 Ill.2d 351, 134 N.E.2d 329 (1956)). But here, APEX has no geographic or temporal pillar on which to rest their defense. And without a temporal restriction, [a] restrictive covenant is unreasonable as a matter of law." *Nw. Podiatry Ctr., Ltd. v. Ochwat*, 2013 IL App (1st) 120458, ¶ 47, 990 N.E.2d 347, 360. This makes sense: as currently written, the confidentiality provision prohibits Ball and Linebarger from using any skills, computer programs, "processes," or literally anything else that they used at APEX, from now until Ragnarök. And blue-penciling such a deficient covenant would be in effect writing a new agreement, which the Court cannot do. *Arcor, Inc. v. Haas*, 363 Ill. App. 3d 396, 406, 842 N.E.2d 265, 274 (2005). The Court will grant Ball's and Linebarger's motion insofar as the confidentiality provisions are concerned.

### B. The Referral Source Provision

The referral source provision is a different story. First of all, it has a temporal limitation: it runs for a period of two years after the respective employee terminated his or her employment with APEX. (ECF No. 83-2, p. 2.) The provision also has a second temporal limitation: it only applies to sources that the employee has had contact with within the two years preceding the termination of employment. (*Id.*) And while the provision does not contain any geographic limitations, the temporal limitation is enough to at least get APEX started on the right foot. *Nw. Podiatry Ctr., Ltd.*, 990 N.E.2d at 360.

Next, the referral source only prohibits former employees from poaching business from "a physician, a hospital, a physician assistant, a nurse practitioner, a nurse case manager, or a business" that has done business with APEX in the two years before that employee left APEX.

7

(*Id.*) And that employee—here, Ball—must have had some form of contact with that referral source in the two years before they left APEX. This is a far-flung contrast from the confidentiality provision: the non-solicitation provision is narrowly tailored to prevent former employees—only within two years of leaving APEX—from poaching near-permanent relationships that the former employee used in some manner while they worked at APEX. This is, again, a hornbook example of APEX complying with Illinois law, *Reliable Fire*, and the factors enumerated in the Restatement (Second) of Contracts § 187 cmt. b, § 188(1) & cmts. a, b, c (1981): "the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions." *Reliable Fire Equip. Co.*, 965 N.E.2d 393, 396. The referral source provision is reasonable, so the Court will deny the motion for summary judgment insofar as it requests relief on that ground.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Ball's and Linebarger's motion for summary judgment. (ECF No. 98.) The Court **DECLARES** that the confidentiality provisions in both Ball's and Linebarger's employment contracts are unreasonable in scope, and therefore invalid as a matter of law. The Court further **NARROWS** the breach of contract claims in APEX's complaint to apply no longer to any alleged breaches of the aforementioned confidentiality provisions.

**IT IS SO ORDERED.**

**DATED: OCTOBER 2, 2018**

<u>s/ *J. Phil Gilbert*</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**