UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| APEX PHYSICAL THERAPY, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ZACHARY BALL, TODD LINEBARGER, and ADVANCED PHYSICAL THERAPY, LLC,<br><br>    Defendants. | Case No. 3:17-cv-00119-JPG-MAB<br><br><br><br><br><br>Consolidated with: |
| ZACHARY BALL, TODD LINEBARGER, and ADVANCED PHYSICAL THERAPY, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>APEX PHYSICAL THERAPY, LLC,<br><br>    Defendant. | Case No. 3:17-cv-00746-JPG-MAB |

## **MEMORANDUM AND ORDER**

**J. PHIL GILBERT, DISTRICT JUDGE**

You cannot create a "sham affidavit"—one "whose conclusions contradict prior deposition or other sworn testimony"—to get past summary judgment. *Dunn v. Menard, Inc*., 880 F.3d 899, 910 (7th Cir. 2018) (quoting *Buckner v. Sam's Club, Inc*., 75 F.3d 290, 292 (7th Cir. 1996)). But that is exactly what APEX Physical Therapy, LLC ("APEX") tries to do here. APEX, a large physical therapy company, sued two of its former employees—Zachary Ball and Todd Linebarger—who left and formed a new company: Advanced Physical Therapy, LLC

1

("Advanced"). Specifically, APEX alleges that Ball's and Linebarger's conduct with their new company breaches their old employment contracts with Apex: (1) a confidentiality provision and (2) a referral source provision. (Am. Compl. ¶¶ 14–21, ECF No 83.) This Court has already ruled that the confidentiality provision is invalid as a matter of law (*see generally* ECF No. 118), so now, just the referral source provision—which appears only in Ball's contract—is left. It reads:

> **4.3** *Non-Solicitation of Referral Sources.*
>
> For a period of two (2) years after the expiration, or termination of Employee's employment with Employer for any reason, and whether voluntary or involuntary and whether for cause or without cause, Employee will not, directly or indirectly solicit, and will not directly or indirectly contact any existing Referral Source or identified prospective Referral Source with whom Employee has had direct or indirect contact or about whom Employee has learned confidential information and/or trade secrets by virtue of his/her employment with Employer, other than Referral Sources that Employer has not had contact with within the two (2) years immediately preceding the expiration or termination my [sic] employment with Employee. A "**Referral Source**" is a person or entity which refers or can refer patients to Employer, such as a physician, a hospital, a physician assistant, a nurse practitioner, a nurse case manager, or a business.

(Am. Compl., Ex. B, p. 2, ECF No. 83-2.) Basically, that provision prohibits Ball from either (1) trying to get his old customers at APEX to switch to his new company; or (2) using any confidential information he learned about APEX's customers while working there to achieve the same affect. But these restrictions only last for two years after Ball leaves APEX—and then he is free to do what he wants.

Besides that contract claim, APEX also alleges that Ball, Linebarger, and Advanced are liable in tort for interference with business expectancy and civil conspiracy. (Am. Compl. ¶¶ 90–101, ECF No 83.) But all of these theories are centered around a central premise: Advanced's business relationship two Tyson Foods facilities in Arkansas, along with a third in Noel, Missouri. (*Id.* at ¶¶ 46–51; *see also* ECF No. 132-12; Jamie Bollinger Dep., 52:18–23, ECF No. 132-10.) APEX says that since they do business with a Tyson Foods facility in Monet, Missouri, they have

a valid business relationship with Tyson Foods generally for the provision of physical therapy—and therefore Ball, Linebarger, and Advanced interfered with that business relationship by soliciting other Tyson Foods facilities that APEX has never actually provided any services for, including in a state that APEX never operated in before bringing this suit: Arkansas. (John Hettenhausen Dep. 33:11–21, ECF No. 132-8; Andrew Vitale Dep. 26:2–18, ECF No. 132-7.)

Ball, Linebarger, and Advanced now move for summary judgment under Federal Rule of Civil Procedure 56. (ECF No. 131.) They are entitled to summary judgment if they "show that there is no genuine dispute as to any material fact and [if they are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). But while reviewing the material facts, the Court must construe the evidence in the light most favorable to the nonmoving party—here, APEX—and draw all reasonable inferences their favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

So in support of their motion, the Advanced defendants point to a wealth of information in the record showing that APEX had no business relationship or expectancy with any of the Tyson's locations that Advanced now does business with. First, in the last two years of Ball's and Linebarger's employment with APEX, the company engaged in no written communication with any Tyson's locations other than the one in Monett, Missouri. (John Hettenhausen Dep. 117:15–118:2, ECF No. 132-8.) Second, APEX never provided any physical therapy services whatsoever in the state of Arkansas either prior to or while Ball and Linebarger worked for APEX. (Andrew Vitale Dep. 26:2–18, ECF No. 132-7.) Third, a corporate representative for APEX—John Hettenhausen—testified that APEX did not reach out to the nurse-manager at the one Tyson

facility in Missouri that Advanced does business with—in Noel—until *after* Ball and Linebarger left APEX. (John Hettenhausen Dep. 71:23–73:19, ECF No. 144-1, Ex. D.) Fourth, that same corporate representative testified that Ball and Linebarger "didn't contact [the Noel Tyson's facility] when they were working for us." (*Id*. at 53:8–25.)

But wait, there's more. Tyson's corporate representative testified that APEX is only one of about *ten* different physical therapy companies providing services to the Tyson facility in Monett, Missouri. (Jamie Bolinger Dep. 61:2–9, ECF No. 144-1. Ex. B.) The process for a physical therapy company to start working with Tyson is no secret: all that you have to do is ask them and provide your company's W-9. (*Id*. at 14:5–15:14; 34:5–13.) And Tyson's worker's compensation branch exclusively refer employees to any particular physical therapy company, nor does it designate a particular place for them to go for treatment. (*Id*. at 61:10–18.)

This all looks bad for APEX, even when viewing the facts in the light most favorable to them. This action is here on diversity jurisdiction, and after several rounds of motions regarding personal jurisdiction and the like, the parties agree that Illinois law applies to this case—though the Advanced defendants have preserved any argument on appeal relating to personal jurisdiction. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); (*see generally* ECF Nos. 51, 87.) So under Illinois law, to prove that Ball breached the referral-sources provision of his contract, APEX has to show that Ball breached the text of the contract and that the breach damaged APEX. *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (citing *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC,* 364 Ill.App.3d 6, 300 Ill.Dec. 601, 845 N.E.2d 22, 30 (2006)). And to show that the Advanced defendants committed the tort of interference with business expectancy, APEX must demonstrate that (1) APEX had a reasonable expectancy of entering into a valid business relationship with these other Tyson facilities; (2) the Advanced

defendants knew about that expectancy; (3) the Advanced defendants' intentional and unjustifiable interference prevented the realization of that business expectancy, and (4) APEX suffered damages accordingly. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill.App.3d 849, 862, 323 Ill.Dec. 507, 893 N.E.2d 981 (1st Dist. 2008); (citing *Mannion v. Stallings & Company, Inc.*, 204 Ill.App.3d 179, 188, 149 Ill.Dec. 438, 561 N.E.2d 1134 (1990)).

But instead of carrying their burden by pointing to the extensive record in this case, APEX introduces and primarily relies on a never-before-seen affidavit from their own vice president and chief operating officer—Steve Oravec—signed and dated about 45 days *after* the Advanced defendants filed their motion for summary judgment. (ECF No. 141-1.) This affidavit looks like divine intervention for APEX: it contradicts nearly every important fact for Advanced in the record, and even directly responds to Advanced's motion for summary judgment in certain instances. (*See, e.g., id.* at ¶ 7.)

For example, the affidavit swears that when Ball worked for APEX, he was actively working to create a business relationship between APEX and the Tyson Foods facilities in Noel, Missouri that Advanced now does business with. (Oravec Aff. ¶ 11, ECF No. 141-1.) He also swears that at the same time, APEX was actively soliciting additional business from the Tyson's facility in Berryville, Arkansas that Advanced now does business with. (*Id.* at ¶ 12.) Those declarations are odd—especially considering Oravec testified at his deposition that the attorneys should instead ask APEX's corporate representative John Hettenhausen about that issue, and Hettenhausen then testified that APEX did not reach out to the Noel, Missouri facility until *after* Ball and Linebarger left APEX. (John Hettenhausen Dep. 71:23–73:19, ECF No. 144-1, Ex. D.) And another representative testified that he was not aware of any work that APEX had done with

any Tyson facility in Arkansas whatsoever when Ball and Linebarger worked for APEX. (Andrew Vitale Dep. 26:2–18, ECF No. 132-7.) The Oravec affidavit is starting to smell a little funny.

The stench gets worse when you see that the affidavit also swears that when Ball worked for APEX, he acquired "confidential information" regarding how you can obtain referrals from Tyson Foods—even though Tyson Foods's own corporate representative testified that there is no "confidential" process, that anyone can work with Tyson simply by asking, and that about *ten* physical therapy companies work with Tyson's Monet, Missouri location alone—not to mention the numerous other Tyson facilities on planet Earth, including those in Arkansas. (*Compare* Oravec Aff. ¶ 17, ECF No. 141-1, *with* Jamie Bolinger Dep. 61:2–9, 14:5–15:14; 34:5–13, 61:10–18, ECF No. 144-1. Ex. B.)

And what is more, the affidavit violates the provisions of Federal Rule of Civil Procedure 56(c)(4). That Rule provides that affidavits used to oppose a motion must be made on personal knowledge and set out facts that would be admissible in evidence. Oravec states that the affidavit is based on both his personal knowledge as well as some supposed "records" of APEX—but there is no way to determine which statements in the affidavit rely on these supposed records instead of his personal knowledge, or even what these records are. (Oravec Aff. ¶¶ 2–3, ECF No. 141-1.) The affidavit cites to nothing, it proves nothing, and it provides nothing of value to this case.

This is a Godzilla-esque "sham affidavit": one "whose conclusions contradict prior deposition or other sworn testimony" for the purposes of defeating summary judgment. *Dunn*, 880 F.3d at 910. In order to survive summary judgment, nonmoving parties have to present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57. But these nonmoving parties cannot create "sham issues of fact with affidavits that contradict their prior depositions"—just as APEX has done here. *Bank of Illinois v. Allied*

*Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). The Court will accordingly exercise its discretion to strike the Oravec affidavit from the record.

And without that affidavit, APEX's case collapses. First, in regards to the breach of contract claim against Ball, the undisputed record shows that when Ball worked for APEX, he never solicited business from the Tyson Foods locations that Advanced now does business with: the locations in Arkansas as well as the one in Noel, Missouri. (John Hettenhausen Dep. 71:23–73:19, ECF No. 144-1, Ex. D; Andrew Vitale Dep. 26:2–18, ECF No. 132-7.) The record also establishes that Ball never learned any "confidential information and/or trade secrets" about working with Tyson—Tyson itself says that there is no secret to working with them, and all you have to do is ask the nurse-manager at the relevant facility. (Jamie Bolinger Dep. 61:2–9, 14:5–15:14; 34:5–13, 61:10–18, ECF No. 144-1. Ex. B.) Zachary Ball did not breach his employment contract with APEX.

And second, in regards to the tortious interference with business expectancy claim, the undisputed record shows that APEX did not have a reasonable expectancy of entering into a valid business relationship with the Tyson Foods locations in Arkansas and Noel, Missouri, nor can they show that the Advanced defendants unjustifiably damaged any business expectancy of APEX's. Instead, APEX's theory here boils down to this: they think that since they were one of about ten physical therapy companies providing services at Tyson's Monet, Missouri facility, they can sue another physical therapy company that starts to do business with any other Tyson facility—even those that APEX has never contacted nor done business with. That looks more like malevolence on APEX's part rather than any wrongdoing by the Advanced defendants. And the Court is puzzled as to what APEX's damages—an essential element of the tort, *Chicago's Pizza, Inc*, 384 Ill.App.3d at 862—would even be, considering the record indicates that tons of physical therapy companies

provide services to individual Tyson's facilities, presumably meaning that nothing is preventing APEX from working with these same facilities as Advanced. (Jamie Bolinger Dep. 61:2–9, ECF No. 144-1. Ex. B.) This is not a case of exclusive contracts.

Besides the Tyson issue, APEX had also alleged in their complaint that Ball was liable for breach of contract because a customer of APEX—Prime Inc.—wrote a testimonial letter for Ball once he left APEX, and then Ball posted it on Advanced's website. The Advanced defendants briefed this issue in their motion for summary judgment, but APEX did not mention it at all in their response. This was a weak theory in the first place, and APEX has unsurprisingly abandoned it by not mentioning it in their response brief. *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (citing *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)).

That resolves Counts I and IV of the complaint, but there are a few other matters to clean up. Count II was a breach of contract claim against Linebarger for violating the confidentiality agreement in his employment contract, but the parties agree that the Court should dismiss Count II after previously finding that confidentiality agreement unenforceable as a matter of law. Count III asked for injunctive relief against Linebarger and Ball for their breach of contract, but since Linebarger and Ball breached nothing, the request in Count III denigrates. Finally, Count V alleged a civil conspiracy amongst Ball, Linebarger, and Advanced "to directly attack Apex's business"— but civil conspiracy must be predicated on some underlying cause of action, and since Ball, Linebarger, and Advanced did nothing unlawful, the conspiracy claim also fails. *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888 (Ill. 1994.)

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Zachary Ball's, Todd Linebarger's, and Advanced Physical Therapy, LLC's motion for summary judgment (ECF No. 131), **DISMISSES** this case **WITH PREJUDICE**; and **DIRECTS** the Clerk of Court to enter judgment in both consolidated cases accordingly.

**IT IS SO ORDERED.**

**DATED: FEBRUARY 12, 2019**

>                             **s/ *J. Phil Gilbert***
>                             **J. PHIL GILBERT**
>                             **U.S. DISTRICT JUDGE**